## SHAVER v. THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

N., the president and managing agent of a corporation for ditch and mining purposes, and who was vested, by a resolution of the company, with discretionary powers as to "all matters pertaining to the prosecution of the projects of the company," and who had been in the habit of making such contracts as he deemed necessary for the good of the corporation, purchased of plaintiff and one S., in the name and for the use of the corporation, a house, to be used as an office for the corporation, and a boarding-house for the laborers employed by the corporation, for $3000, $500 of which N. paid down, and to secure the balance he gave a mortgage, in the name of the corporation, on the premises.   N. then, as agent, took possession of the premises, and, subsequently, several meetings of the trustees of the corporation were held in the house.   Six weeks after the purchase, at a meeting of the trustees, a resolution was offered and rejected, declaring the contract illegal and valid.   Subsequently, the premises were destroyed by fire.   The present plaintiff, who had obtained S.'s interest in the debt, brought suit against the corporation to recover the amount, and for a foreclosure of the mortgage: *Held*, that N. had authority to make the contract to bind the corporation; and if such authority were doubtful, the acts of the corporation amounted to a ratification of the contract.

And where N., after the rejection of the resolution, made arrangements with the tenant in possession, who was a married woman, to pay the purchase-money and take a conveyance of the premises, and in pursuance of this agreement she paid $500, which was credited on the mortgage, and plaintiff was informed of this arrangement, and approved of it: *Held*, that this agreement was void, because the tenant, being a married woman, had no capacity to contract, and any agreement on the part of plaintiff to accept her as purchaser, and release the corporation, was void, for want of consideration.

Parol proof of the existence of a debt intended to be secured by mortgage is admissible.   See Bennett v. Solomon, (6 Cal., 134.)

Such a mortgage is void, but this fact does not invalidate the debt intended to be secured by the mortgage.

APPEAL from the District Court of the Eleventh Judicial District, County of Placer.

This was an action to recover of the defendants, a corporation under the name of "The Bear River and Auburn Water and Mining Company," a judgment for $2000 and interest, and for a foreclosure of a mortgage.

The material facts, disclosed by the record, are: that one Nixon, who was president and managing agent of the Bear River Company, purchased of plaintiff and one Sharp, in the name and for the use of the company, a house, which was intended to be used as an office for the company, and a boarding-house for the laborers employed in constructing their ditch.

The price agreed on was $3000, to secure the payment of which, Nixon executed a mortgage, in the name and under the seal of the company. He then, as agent of defendants, took possession under the purchase, paid five hundred dollars of the purchase-money, put a tenant in charge of the premises, and several meetings of the trustees of the company were held in the house. Some six weeks after the purchase, it appears from an entry in the books of the company, a resolution, declaring the contract legal and valid, was offered and rejected. Before this, Nixon had been, by resolution, vested with discretionary power, as to "all matters appertaining to the prosecution of the project of the company." He had been in the habit of making such contracts as he deemed necessary for the good of the company, and the contract with plaintiff is the only one defendants attempted to reject or repudiate.

Some time after the rejection of this resolution, an arrangement was made between Nixon and the tenant in possession, who was a married woman, by which the tenant agreed to pay the purchase-money due by the terms of the contract, and take a conveyance of the land. Plaintiff was informed of this agreement, and expressed himself satisfied with it. Five hundred dollars were paid by the tenant, pursuant to this arrangement, which payment was credited on the mortgage. Soon after this, the premises were destroyed by fire. Before the institution of this suit, Sharp assigned his interest in the demand to the plaintiff.

The case was tried without a jury. The defendants had judgment, and the plaintiffs appealed.

*Smith & Hardy* for Appellants.

*Crocker & Robinson* for Respondents.

1. The defendants never entered into the contract set forth in the complaint, but it was made with Nixon individually.

*First*—The defendants had no power to purchase real estate for hotel purposes. The statute which regulated such corporations at that time, was passed April 22, 1850, and is found in the Statutes of 1850, page 365. This company was organized to

construct a ditch to convey water from Bear River to Auburn, and its vicinity. By § 123 of the statute they were only authorized to purchase and hold such real estate as "may be necessary to enable the said company to carry on their operations."

The defendants in this case, as soon as the action of Mr. Nixon was brought to their notice, immediately rejected it, knowing that they had no right or power to purchase or hold such real estate.

They had the right thus to act upon the matter, as they could not be held bound upon a purchase which was made in violation of their charter.

An action can not be sustained which is founded on a transaction prohibited by statute, although the contract be not expressly declared void. 4 Sergeant & Rawle, 160; Chitty on Conts., 692–694; 3 McLean, 214; 7 S. & M., 380.

No right can be derived from any agreement made in express opposition to the law. 5 Harr. & Johns., 193.

The contract of a corporation unauthorized by, or in violation of its charter, is void. Orr v. Lacey, 2 Douglass, (Mich.,) 230; Angell & Ames on Cor., 236; 7 Wendell, 280; Ib., 31; 3 Wend., 482.

Corporations are bound to follow strictly the letter of their charters, and can exercise no power unless granted to them, or absolutely necessary to carry out the powers granted. 2 Cal. R., 524.

Corporations have no powers except such as are specifically granted, and must be held strictly within the limits of their granted power. Lowe v. Marysville, 5 Cal. R., 214.

In this case it was also held that authority to take stock in a "public improvement" would not authorize taking stock in a "Steam Navigation Company."

*Second*—Nixon had no authority to make the purchase.

In June, 1851, the directors of the company gave Nixon "discretionary powers in reference to the contract with Mr. Gay, as well as all other matters appertaining to the prosecution of the project of the company."

Even if the company had power to purchase "hotels," still we contend that they did not authorize Nixon to make such purchases by this resolution, which is the only one giving him power to act as agent. It is evident that this resolution was intended to give Nixon power in reference to contracts with Gay and other parties, relating to the ditch then being constructed, and that it was never intended to authorize him to buy hotels. The extracts from the records of the company show that, notwithstanding this general authority, the directors still passed upon his acts, and ratified or rejected them as they saw best.

The company were then engaged in digging their ditch, which runs one and one-half to two miles from Ophir. It was let out to

contractors, among whom were Nixon and this Gay. The "project" of the company, referred to in this resolution, was the digging of the ditch, and the "discretionary power" was in relation to these contracts. There is not a particle of evidence that the purchase of "hotels" formed any part of the "project" of the company.

It may be urged that the company needed an office, and boarding-house in which to board workmen. But the evidence shows that the office of the company was then located at Nevada, and when changed, it was removed from Nevada to Auburn, and not to Ophir—and this was not until after this contract was made. They did not need it to board laborers, for the evidence shows that "the company employed no hands in digging the ditch," and Nixon himself was the contractor who was digging the ditch near Ophir, so that it was Nixon, and not the company, who wanted a boarding-house.

Corporations are bound only by contracts of their agents done within the scope of their authority. Angell & Ames on Corporations, 288.

But if the company ratify such contract, it is equivalent to a previous authority. Ibid., 298. Here, however, there was a direct refusal to ratify.

It may be contended that as President Nixon was the general agent of the company, his acts would bind the company, without any resolution or vote of the company. But this Court has already decided that an agent acting for a corporation must be authorized by a vote of the corporation, otherwise his agency is void, as an aggregate corporation can only contract by vote. 4 Cal. R., 127.

2. But we also contend that no contract was proven by which Nixon or the defendants became liable personally for the purchase-money, but the remedy of plaintiff is confined to the property.

The contract is in writing, and the parties are only bound by the written instrument, and that contains no promise or agreement to pay the purchase-money. They took no note or other obligation for the payment of the money.

This case has been before this Court once before, and it was held that the mortgage contained no express covenant or agreement to pay, and therefore no action would lie upon it. 4 Cal. Rep., 294. And this point is fully sustained by the authorities. 3 Comstock, 264; 10 J. R., 37; 7 Watts, 360; 6 Blackford, 162, etc., etc.

But plaintiff claims that he has a right to disregard the mortgage, and sue for the original purchase-money, as an independent debt. But this, we say, he can not do, without showing a written promise or agreement to pay the money. This is one of the main points in this case, and we rely upon it with confidence.

We contend, that by not taking any note, or inserting in the mortgage any express covenant to pay, it was the agreement of the parties that Sharp and Shaver should look solely to the property for payment, and that defendants never agreed to incur any personal liability.   On the trial, the defendants objected to any parol evidence of the agreement, on the ground that it being in writing, that was the best evidence, and took their exception.

The parties, by making a written instrument, have agreed that the writing shall be referred to as proof of their act and intention, but that they would not subject themselves to any stipulations beyond such contract, because if they meant to be bound by any such, they might have added them to their contract. 4 Cowen and Hill, notes to Phil. Ev., 593, note 395 ; Chitty on Contracts, 107, 108 ; 1 Greenleaf Ev., § 87 ; 1 Cal. Rep., 129, 337.

These rules apply to deeds, and even where the paper does not purport to contain any portion of the contract beyond a bare conveyance of title.   4 C. and H., notes 594, 596.

It also applies to contracts respecting and conveyances of land, and the contract is merged in the deed of conveyance and the note or mortgage for the purchase-money.   4 C. and H., notes 598 ; 1 Day, 23 ; 3 J. R., 506 ; 4 Stewart and Porter, 96, 138.

Instruments of this kind, where there is no note or express covenant, are termed conditional deeds, as distinguished from mortgages.   2 Edwards Ch. Rep., 144 ; 7 Cranch, 237 ; 1 Hilliard on Real Property, 382 ; 8 Paige, 258.

And in all such cases the Courts hold that the land belongs to the party upon the non-performance of the condition, but he has no personal remedy.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—FIELD, J., concurring.

The first question presented is as to the capacity of defendants to enter into the contract.   By the law under which they were incorporated, defendants are authorized to purchase and hold " such real and personal property as may be necessary to enable the company to carry on their operations."

It is contended by respondents that the property in question was not necessary to the operations of defendants, and for this reason the contract was without authority, and void.   But upon this point there appears to be no evidence, and the law presumes in favor of the validity of contracts.

Besides, it does not follow because an agent purchases property which is not absolutely necessary for the purposes of the company that the latter can, after receiving the property, avoid the payment of the purchase-money.   This question arose in the case of Moss v. The Rossio Mining Company, (5 Hill, 137,) Cowen, Justice, in delivering the opinion of the Court, said :   " I am

not aware that a corporation, more than another, can purchase and convert an article to its own use, and then object that it acted beyond the statute power. It is itself a sort of agent, and must be the judge as between itself and the vendor whether the article be wanted or not. The vendor can not pronounce on the question. * * * Purchasing a shop for the purpose of keeping goods and carrying on trade is objected to. But is the loss to fall on the grantors of the shop or the vendors of the goods? The goods to be purchased, for aught Moss and Knapp knew, might be wanted by the workmen of the company in payment for labor, and been even more acceptable than cash."

This authority applies directly to the case before us. It was certainly necessary that defendants should have an office in which to keep the papers and books of the corporation, and which would serve as a place of meeting for the trustees, and it was probably thought advantageous to the defendants to have a place at which the hands employed by them could be boarded. Considerable stress is laid by the respondent, on the fact that the house purchased was a hotel, and it is said " it was certainly no part of the objects of the corporation to embark in hotel-keeping." . It is true, the house is called in the conveyance the " Empire Hotel," but the description of it in the evidence, as well as the price for which it was sold, raise a strong presumption that it was susceptible of being put to other uses.

The authority of Nixon to make the contract, as the agent of the company, we think, sufficiently appears; and if this point were doubtful, the acts of the company amounted to a ratification. Nixon, as agent of the defendants, entered into possession immediately after the purchase; the trustees held their meetings in the house, and nothing is said as to his want of authority till some six weeks afterwards, when, at a meeting held on the premises, the resolution approving the contract was offered and rejected.

The entry of this resolution comes in a very questionable shape, and is entitled to but little weight, as it contains erasures and interlineations which materially vary its meaning, and is, at least, a very singular mode of repudiating a contract.

It would have been more in accordance with correct notions of propriety and justice, if a resolution refusing to accept the contract had been *passed*, accompanied by an offer to cancel the deed, which had not been recorded, and return the property of which they were in possession.

The arrangement between Nixon and the tenant was void, because the tenant, being a married woman, had no capacity to contract, and any agreement on the part of plaintiff to accept her as purchaser, and release the company, was void, for want of consideration.

The objection to the parol proof of the existence of the debt in-

26

tended to be secured by the mortgage, is answered by the decision of this Court in Bennett v. Solomon, (6 Cal., 134.)

There is no doubt that the mortgage itself, being in contravention of law, is void, but it is not perceived that this fact invalidates the debt it was intended to secure. (Sherwood v. Dunbar, 6 Cal., 52.)

Our conclusion from the record is, that plaintiff is entitled to recover from the defendants the sum of $2000, with legal interest from the time when the several payments became due under the contracts.

Judgment reversed and cause remanded, with directions that the Court below enter a judgment in conformity with this opinion.