No. 28,248.

J. W. McDaniel, *Appellant*, v. The Altoona State Bank, of Altoona, Roy L. Bone, Bank Commissioner, Charles W. Johnson, and W. H. Edmundson, Deputy Receiver of the Altoona State Bank, *Appellees*.

(271 Pac. 394.)

Opinion filed November 3, 1928.

*E. D. Mikesell*, of Fredonia, for the appellant.
*W. H. Edmundson*, of Fredonia, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action against the receiver of a failed bank to have two notes which plaintiff had executed to the bank adjudged to have been executed for the accommodation of the bank, and for their return or cancellation. By cross petition the receiver prayed judgment on the notes. The case was tried to the court, findings of fact were made, judgment was rendered for defendant, both on the petition and cross petition, and plaintiff has appealed.

The facts, as disclosed by the evidence and found by the court, so far as they relate to whether the notes were given for the accommodation of the bank, may be stated briefly as follows: Plaintiff, a man getting well along in years and fairly well-to-do, had kept his account and done his banking business with the Altoona State Bank for several years, and was well acquainted with C. E. Hayhurst, its president, and Charles H. Beaty, its cashier, who were the active managing officers of the bank. In 1925 the bank was

having financial difficulties, being unable to collect some of its notes. The bank commissioner, after an examination of the bank, made a requirement that two certain notes be removed from the assets of the bank. One of these notes was for $382, signed by Guy Smith, and the other was for $1,736.44, signed by J. N. and Nellie Carver. These notes were not collectible at that time, but the makers might be able to pay them in whole or in part later. Mr. Hayhurst explained this situation to plaintiff, and told him it would accommodate the bank if plaintiff would execute his notes to the bank for the amounts of the Smith and Carver notes, the bank to transfer those notes to him and guarantee their payment in writing. Plaintiff consented to this, relying largely on the bank's guarantee. Plaintiff then executed to the bank two notes, one for $382 and the other for $1,736.44. These were placed among the assets of the bank and the Smith and Carver notes taken out. These appear to have been kept for awhile by Hayhurst, who had the makers renew them, and they were then indorsed without recourse and delivered to plaintiff at his request. The bank then executed to plaintiff its written instrument in the form of a letter to him, which reads as follows (omitting date and caption):

"DEAR SIR—For value received, this bank hereby guarantees the full payment of the following-described notes, which are now held by you, and which were indorsed to you without recourse by this bank. Note of J. N. and Nellie Carver, dated October 9, 1925, $1,736.44, maturing April 9, 1926. Note of Guy and Emily Smith, dated September 5, 1925, $382, maturing March 5, 1926. Hereby waiving notice of the acceptance of this guarantee, and meaning and intending to hereby create the same obligations, as if this contract was written on the backs of said notes. Dated this 6th day of November, 1925, at Altoona, Kansas.                    THE ALTOONA STATE BANK.
                                By C. E. HAYHURST, President.
                                By C. H. BEATY, Cashier."

The matter remained in that condition, except that plaintiff renewed his notes to the bank, on one or two occasions, until the bank failed and was taken in charge by the bank commissioner in December, 1926, at which time plaintiff's notes were a part of the assets of the bank.

Plaintiff sued to recover these notes from the receivers on the theory that they had been given for the accommodation of the bank, and constitute accommodation paper as defined by R. S. 52-306. On this point the trial court held against plaintiff. The holding is correct. What plaintiff did was to buy the Smith and

Carver notes from the bank, and he paid for them with his own notes. Even if the Smith and Carver notes were of little or no value at that time, the plaintiff had the bank's guarantee of their ultimate payment, which he regarded then as being good. He did not, therefore, execute his notes to the bank "without receiving value therefor" (R. S. 52-306). Perhaps it was an accommodation to the bank to be able to sell the Smith and Carver notes—just as it may be regarded as an accommodation to any one to find a buyer for a thing he desires very much to sell—but that is not what is meant by an accommodation party in the law of negotiable instruments.

The trial court also held that plaintiff could not recover the notes, for in giving them he had knowingly aided the officials of the bank in a scheme to deceive the bank commissioner as to the assets of the bank, within the rule stated by this court in *State Bank v. Olson,* 116 Kan. 320, 324, 226 Pac. 995, and allied cases. Perhaps it was not necessary for the trial court to make this finding. There are circumstances, however, not necessary to be here detailed, which give support to this view. Naturally, if that was the purpose of the parties, the plaintiff could not recover in this action. The same result is reached by treating the transaction as a sale of the Smith and Carver notes to plaintiff upon the terms agreed upon by the parties, which view we regard as being more clearly in accord with the evidence.

It developed in the testimony that the president and cashier of the bank had not been specifically authorized, at any meeting of the board of directors or of the stockholders of the bank, to execute, on behalf of the bank, the instrument of guaranty, and thus make the sale of the Smith and Carver notes to plaintiff upon the terms hereinbefore stated. Because of that the trial court held that the action of the president and cashier in executing the instrument of guaranty was without authority, and the instrument therefore void. In this the trial court erred. It is one of the inherent functions of banks to buy and sell ordinary negotiable paper (R. S. 9-101; 7 C. J. 592, 594), and the president and cashier, being the active managers and officers of the bank, are, from the very nature of their official positions, authorized to transact such ordinary business (7 C. J. 552, 558). In selling the Smith and Carver notes they could do so on any business terms agreed upon by the purchaser. They could have indorsed the notes without recourse, which

would have relieved the bank of any future liability, except that the instruments were genuine (R. S. 52-606). They could have indorsed them in such a way that the bank would have been liable as an unqualified indorser (R. S. 52-607), and there is certainly nothing illegal or contrary to public policy in transferring the notes upon a guaranty of their ultimate payment. Even if the acts of the officers were *ultra vires*, the bank, having received the benefit of the transaction, is hardly in position to raise that question. (*Saylors v. Bank*, 99 Kan. 515, 163 Pac. 154; id. 100 Kan. 64, 163 Pac. 454.) It is true the indorsement placed on the notes and the written instrument of guaranty tend to conflict, but it is clear they should be construed together, and the effect of them is to transfer the title of those notes to plaintiff with a guaranty on the part of the bank for their ultimate payment.

Under this contract for the sale of the notes the plaintiff's remedy was to collect what he could on the Smith and Carver notes by suit and execution, if necessary, and if the full amount thereof was not collected, to present his claim to the bank for the difference. It develops that since the contract was made the bank has failed, and its guaranty is perhaps not good; but this fact does not prevent the plaintiff from proceeding on the only course really open to him and recovering all he can. It does not have the effect of changing the nature of the original transaction between plaintiff and the bank to one for the accommodation of the bank. The holding of the trial court, that the president and cashier of the bank were without authority to issue the instrument of guaranty, and that the same was void for that reason, is reversed. In all other respects the judgment of the court below is affirmed.