Argued February 24; reversed March 21, 1933
ERTZ *v.* MURRAY ET AL.
(19 P. (2d) 1092)

*Henry S. Westbrook,* of Portland, for appellants.

*Ralph A. Coan,* of Portland (Coan & Rosenberg, of Portland, on the brief), for respondent.

KELLY, J. For some time prior to September 17, 1927, The Bank of Freewater was actively engaged in business at Freewater, Umatilla county, Oregon. Two notes held by said bank had been disapproved by the bank examiner; and, to afford approved assets for said bank in lieu of those two notes, the defendants executed the note in suit, which is a joint and several note, dated September 17, 1927, to become due six months thereafter in the sum of $539 bearing interest at 8 per cent from date.

In his amended complaint, plaintiff alleges the execution and delivery of said note; and further alleges:

"That thereafter and for valuable consideration, The Bank of Freewater, by and through its president, David Harris, duly transferred said note to the plaintiff herein who ever since that time has been and now is the holder and owner thereof".

The execution of the note is admitted, but the transfer thereof is denied.

Plaintiff's evidence in chief discloses that in May, 1930, at Portland, Oregon, plaintiff and David Harris made a trade. In this trade plaintiff received the note in suit and other property and as the consideration therefor plaintiff made a deed of conveyance to Mr. Harris of plaintiff's interest in the Bungalow Court, the same being an apartment house in Portland.

It is admitted that Mr. Harris was then president of The Bank of Freewater.

The note bears the following endorsement:

"Pay to Chas. W. Ertz, without recourse on The Bank of Freewater, Freewater, Oregon, by David Harris, Pres."

It is admitted that the signature thereto is that of Mr. Harris.

At the conclusion of plaintiff's case in chief, defendants moved for an order of involuntary nonsuit, which was denied and an exception allowed.

■ The question is thus presented whether the foregoing evidence shows, or tends to show, that Mr. Harris was authorized by The Bank of Freewater to transfer the note in suit to plaintiff.

It will be noted that express authority from the board of directors or the stockholders of the bank is not shown. It is not disclosed that, at the time of the

transfer, Mr. Harris was the managing agent of said bank, or the custodian of its funds, or that said bank was then engaged in business. It is shown that the transaction did not take place in the office or place of business of the bank, and it *is* shown that the consideration for the transfer passed to Mr. Harris individually. It is not shown that the bank ever received any part of it.

The cases cited by plaintiff upon this point are readily distinguishable from the case at bar.

*State ex rel. Carroll, Auditor, v. Corning Savings Bank,* 139 Iowa 338 (115 N. W. 937), is a case wherein it is shown that the transferring bank was actively engaged in the banking business, the transferee was its correspondent bank, the president, who negotiated the transfer and made the endorsements in transferring the papers, "did not undertake to act for himself, but solely for the bank for which he was the chief executive officer".

*State Bank of Westport v. Magraw, Kerfoot & Co.,* 159 Minn. 153 (198 N. W. 422), recognizes the rule that the implied authority of the president of a bank to endorse negotiable paper of the bank is limited to the endorsement of such paper for the purposes of the bank. In that case, too, a provision of the bylaws is part of the record, to the effect that—

"The president and cashier shall be responsible for all moneys, funds and valuables of the bank intrusted to their care by the board of directors, or which otherwise may come into their hands as president or cashier".

In commenting upon the fact that the check given by the purchasing bank ran to Turrittin (the president) as payee and he was named in the sales bill of

the liberty bond, which constituted the remaining part of the consideration, as the one to whom it was sold, the court speaking through Mr. Justice Holt say:

"This merely relates to the manner of paying for the draft. It does not show that Turrittin intended to use what he obtained for his own purposes. Under the bylaw referred to, he was the custodian of the bank's funds, and defendants, in dealing with him as such, were justified in paying for the draft in such medium and form as he might request, so long as it did not appear that he wrongfully sold the draft or was intending to appropriate the proceeds for his own use".

In *McDaniel v. Altoona State Bank et al.*, 126 Kan. 719 (271 P. 394), it appears that the president and cashier, whose authority is in question, were the active managing officers of the bank. This significant statement appears in the opinion:

"Even if the acts of the officers were ultra vires, the bank, having received the benefit of the transaction, is hardly in position to raise that question".

In *Schwehm v. Chelten Trust Co.*, 257 Pa. 76 (101 Atl. 93), the bylaws of the Federal Loan Society are in the record disclosing that the president was made the chief executive officer and the general active manager of the business of the company.

In *People's Bank of Belleville v. Manufacturers' National Bank of Chicago*, 101 U. S. 181 (25 L. Ed. 907), it appears that the defendant was the plaintiff's correspondent at Chicago. The question there was as to the validity of a guaranty. The vice president, who was also one of the directors of defendant, with the knowledge and consent of the president and cashier of defendant, transmitted the notes and guaranty thereof to plaintiff. Thereupon the plaintiff's account

with defendant was debited in the amount and on account of the notes. At the same time the maker's paper in defendant's hands was cancelled to the same amount.

We quote from that opinion:

"All the parties engaged in the transaction and the privies were agents of the defendant. If there were any defect of authority on their part, the retention and enjoyment of the proceeds of the transaction by their principal constituted an acquiescence as effectual as would have been the most formal authorization in advance, or the most formal ratification afterwards. These facts conclude the defendant from resisting the demand of the plaintiff''.

Where, as in the case at bar, the transaction occurs outside of the banking offices of the payee named, not in the usual course of banking business, and consists of a trade wherein a promissory note long over due is traded by the president of the payee, a bank not then shown to be actively engaged in business, for an interest in real property which is then conveyed, not to the bank, but to the president as an individual, and no bylaws, resolution or other evidence is introduced disclosing that the president was then or ever had been the managing officer of the bank, or intrusted with any of its assets, or that the bank ever received any part of the consideration for the trade, we hold that no authority on the part of the president is shown whereby he may make a valid transfer, either by endorsement or otherwise, of the note in question as the act of the bank. No such authority being shown, the purported endorsement was ineffective and insufficient to constitute plaintiff an endorsee or holder of the note in suit.

For this reason the motion of defendant for judgment of involuntary nonsuit should have been sustained.

To explain our unwillingness to enter a judgment of dismissal herein, we feel warranted in referring to the evidence adduced on behalf of defendants and in rebuttal by plaintiff. It discloses that at a meeting of the stockholders held on June 16, 1928, an assessment was levied upon the stock of The Bank of Freewater. Of the holders of the 300 shares of such stock, those holding 251½ paid their part of this assessment.

On the 26th day of June, 1928, the following instrument was executed, the same being known to this record as plaintiff's exhibit 4, to wit:

## "TRUST AGREEMENT

"We, the undersigned T. A. Crowe and David Harris, acting as trustees for the following stockholders of the bank of Freewater in the following proportions.

| | | | |
|---|---|---|---|
| W. A. Hattrem | 220 shares | out of | 251½ |
| H. R. VanSlyke | 5 | do | do |
| R. E. Bean | 5 | do | do |
| Fred G. Stevens | 5 | do | do |
| David Harris | 6½ | do | do |
| L. A. Reineman | 5 | do | do |
| J. A. Records | 5 | do | do |

do hereby deposit with the Bank of Freewater for safe keeping the following notes and securities,

| | |
|---|---|
| Note Murray VanSlyke and Bean | 539.00 |
| Note J. C. Hammer | 200.00 |
| Note W. A. Harshfield | 300.00 |
| W. C. Hopson note | 2,500.00 |
| J. H. West note | 200.00 |
| Maude New note and R. E. 2nd Mort. | 6,382.87 |
| J. W. White note | 935.00 |

W. A. Harshfield note and contract (H. R.
VanSlyke) ............................................... 260.00
Note Alva O. Bliss ...................................: 325.00
Note Fred Feigner ........................................ 50.00
Note Freewater Investment Co. ................., 110.00
Note Guy Hobson (30 shares of Bank of
Freewater stock in name of J. W. Hyett
endorsed in blank) ................................. 700.00
Note Louis Howton ...................................... 65.00
Note Louis Howton ...................................... 89.30
B. F. Kimbrell note ..................................... 50.00
G. S. LaRue note (5 shares of Bank of
Freewater stock in name of H. R. Van
Slyke endorsed in blank) ......................... 100.00
G. S. La Rue note ........................................ 26.30
Ellen Lynd note ........................................... 281.00
Geo. P. Sanderson note O. K. FAC ............ 297.30
J. E. Snively note O. K. DH ....................... 282.34
John Melzer note and R E 2nd Mort. .......... 2,828.00
Reserve for taxes ....................................... 846.20
Note J. W. Hyett and wife .......................... 1,500.00

It is understood and agreed by and between the aforementioned trustees Crowe and Harris, that whatever funds are realized from the liquidation of the securities, notes and etc. beforementioned, which liquidation is the purpose of the within agreement that the money received from such liquidation shall be immediately paid over to the seven stockholders named in the proportion of their number of shares to the total number of units involved which is 251½. In the liquidation of such securities, notes, etc., any expense incurred by the trustees Crowe and Harris shall be borne by the seven stockholders in the same ratio as that used under the liquidation and repayment to the seven stockholders such expense if any must be approved by W. A. Hattrem and at least two of the remaining six stockholders.

If it be deemed necessary by any one of the seven stockholders to institute action against the makers or endorsers of any of the within notes, securities, etc.

it shall be the right and privilege of said stockholder to individually or collectively institute such suit or action or legal proceedings.

In regard to the above item of 845.20 set up by the seven stockholders as a reserve for taxes to meet the bank stock taxes for the last half of the year 1926 and the first half of the year 1927, that in case it is not necessary to pay said taxes for the years mentioned (Depending on the outcome of the suit brought recently in the federal court by the national banks against the state of Oregon) that said reserve (now held by the Bank of Freewater as a Suspence account) shall be repaid to the seven stockholders in the same ratio as previously mentioned.

If the trustees Crowe and Harris decide that they have effected all the liquidation of the notes and securities possible or it is their wish to relieve themselves of their trusteeship they may make a division of the securities entrusted to them in the same ratio as previously mentioned or to turn over to two new trustees who may be appointed by W. A. Hattrem and not less than three of the remaining six stockholders.

The Bank of Freewater hereby acknowledges receipt of the above mentioned notes, securities etc., as safekeeping for Trustees Harris and Crowe.

The Bank of Freewater,

By David Harris (Sgd)

Cashier.

Signed

Trustees for stockholders of
The Bank of Freewater
By (Sgd) F. A. Crowe, Trustee
By (Sgd) David Harris, Trustee''.

In January, 1929, The Bank of Freewater discontinued active business. Sometime prior to February 9, 1929, The Bank of Freewater consolidated with the First National Bank of Milton in which consolidation the directors of The Bank of Freewater gave their

personal notes and guaranties aggregating $29,500 and a transfer to C. R. Guigel as trustee was made of certain notes which were unacceptable to the First National Bank of Milton aggregating $47,086.83, the furniture, fixtures and the real estate of The Bank of Freewater, to be sold; and the proceeds thereof to be paid upon the notes and guaranties of said guarantors, after the payment therefrom of $7,000 for a note made by the Freewater bank to the Milton bank, and the remainder thereof to become the property of the Freewater bank. The note in suit was not included in said notes thus transferred, nor was it transferred to the Milton bank.

Mr. Harris, testifying in behalf of plaintiff in rebuttal, said that at the time of the transfer of the note to plaintiff The Bank of Freewater had no interest in the note in suit.

There is testimony to the effect that at least two of the defendants were present at the meeting when the execution of the instrument, known as plaintiff's exhibit 4, was authorized.

There is further testimony to the effect that Mr. Harris sold certain securities listed in plaintiff's exhibit 4, other than the note in suit; and applied the proceeds of such sales to the credit of the cestui que trustent named in said exhibit.

This indicates that under an appropriate allegation of facts, the question of whether plaintiff is entitled to recover may be presented and solved without prejudice to the substantial rights of anyone.

It is not our province now to determine or intimate whether or not such facts may be established; but if it should be alleged and proven that The Bank of Freewater, as the owner of the note in suit, transferred

it to Harris and Crowe as liquidating trustees for defendants and the other assessment-paying stockholders; that Crowe failed to assume the duties of such trusteeship; that Harris entered upon the discharge of such duties, and, as such trustee, transferred said note to plaintiff; that defendants, or at least some of them, participated in the meeting at which the instrument was executed creating said trusteeship of Crowe and Harris, and, knowing that Harris was acting as such trustee, took no action to prevent him from so doing and hence ought not to be permitted to deny execution of said trustee agreement, or to deny that Harris had authority thereunder to transfer said note for the purposes of liquidation, and that as such trustee Harris did transfer the same to plaintiff, then at least as to the defendants, who participated in the meeting wherein said instrument of trust was executed and who knew of Harris' acceptance and attempted discharge of the duties thereunder without objecting thereto, plaintiff would be entitled to maintain an action upon said note. If such action should be instituted and prosecuted, nothing herein stated should be construed as a bar to the interposition of any defense on the part of defendants or either of them whether embraced within the pleadings or proof in the case at bar or not.

For the reasons stated it is ordered that the judgment of the circuit court be reversed and this cause remanded with instructions to sustain defendants' motion for involuntary nonsuit.

BELT and ROSSMAN, JJ., concur.

RAND, C. J., concurs in the result.