No. 31,249

EVANGELINE COY, *Appellant*, v. GEORGE CUTTING, *Appellee*.

(23 P. 2d 458.)

Opinion filed July 8, 1933.

T. D. Relihan and A. W. Relihan, both of Smith Center, for the appellant.
R. W. Hemphill and W. E. Mahin, both of Norton, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action under our civil-damage statute (R. S. 21-2150), in which plaintiff seeks to recover for the loss of her means of support in consequence of the intoxication of her husband produced by Jamaica ginger sold him by defendant. The trial court sustained a demurrer to her evidence, and she has appealed.

Briefly stated, the petition alleged that plaintiff is the wife of J. P. Coy, upon whom she was dependent for her means of support and from whose labors and personal earnings she received her support; that early in March, 1930, he was earning about $300 per month; that he owned and operated a barber shop in the city of Norton and had a large and profitable business, and in connection therewith sold barber supplies; that defendant owned and operated a drug store in the city of Norton, and among other things sold an intoxicating liquor, commonly known as "Jamaica ginger," for beverage purposes, which plaintiff's husband drank and thereby became intoxi-

cated from the use thereof, and as a result of drinking the same and of the intoxication aforesaid became afflicted with paralysis, a disease commonly called "Jake paralysis," and that as a direct and proximate result thereof and in consequence of the sale of said intoxicating liquor by the defendant to J. P. Coy, husband of plaintiff, and of his affliction caused by drinking the same and by his becoming intoxicated therewith, he became wholly incapacitated from performing labor and became and is an invalid, and as a result thereof plaintiff has been and is deprived of her means of support, to her damage in a sum named. The answer admitted that plaintiff is the wife of J. P. Coy, that he was engaged in the barber business at Norton, and that defendant owned and operated a drug store in Norton, and alleged that about March 4, 1930, defendant had in his store for sale, for medical purposes, a patent medicine known as Jamaica ginger, used in the treatment of stomach and intestinal disorders, and that any sales made by defendant were for medicinal purposes only; that such Jamaica ginger had been purchased by defendant, bottled, labeled and stamped "U. S. P."; that patent medicines are so stamped when they have passed the pure-food-and-drug requirements of the United States, and that defendant relied upon the purity of such medicine by reason thereof; that the use of pure Jamaica ginger could not cause paralysis, as claimed in plaintiff's petition, and if J. P. Coy purchased any Jamaica ginger of defendant and drank the same and became paralyzed such condition was not the result of intoxication or the use of pure Jamaica ginger, but was due to the presence of some foreign ingredient of a poisonous character in the Jamaica ginger, the kind, nature and presence of which was then and is now unknown to defendant; and it was specifically denied that the injury complained of in plaintiff's petition, commonly called "Jake paralysis," was either proximately or remotely the result of intoxication.

The evidence may be summarized as follows: Plaintiff testified that she is the wife of J. P. Coy, to whom she was married in 1912; that he is a barber, and has been engaged in that business in Norton for fifteen years, and since 1929 has had a shop of his own; that prior to March 4, 1930, he was addicted to the habit of drinking intoxicating liquors, but "not a great drinker"; he lost no time from his work by reason of drinking, so far as she knew. After that date she observed that he became physically impaired, unable to walk, his feet dragged, and his hands were paralyzed. After she first

noticed this it became worse—he got helpless, would fall to the floor, and there came a time when he could not walk and was required to go to bed. Plaintiff took care of him, took him to Waconda Springs for a time, and had doctors visit, examine and treat him, without substantial change from these various efforts; that from about March 4, 1930, until March 28, 1932, he was unable to work and contributed nothing to her support. Previously he had supported plaintiff entirely. During this time she not only had to care for him, but support herself. At the time of the trial there had been some improvement in his condition—he could walk some, drive a car, and she received some income from the shop, which was being operated by others. Plaintiff saw several bottles of Jamaica ginger which her husband had brought home and of which he drank the contents.

J. P. Coy testified on behalf of plaintiff that he had lived in Norton since 1915, was a barber, the husband of plaintiff, that he owned and operated a shop and sold barber supplies, and in March, 1930, had a prosperous business; that he had been a drinking man for a good many years—a pretty steady drinker; that he had often been intoxicated; that he had used all kinds of intoxicating liquors, including vanilla extract, and previous to 1930 had bought Jamaica ginger from others than defendant. Defendant purchased the drug store in Norton in 1929. Early in January, 1930, he first bought Jamaica ginger from the defendant, and between that time and March 4, 1930, had bought about twenty-five bottles of it.

"The first bottle I got there I took home with me and drank it just before I ate supper, and I could feel the effects of it. I had been intoxicated and know what the effect of intoxicating liquor is. You take a drink, and after it gets through burning you have a right smart kick. That is what I drank it for, to get the kick. . . . After I bought the first bottle in January I went back for more. Sometimes four or five times a day. I would take spells, not take a drink for a week, and then I would start again. In each instance that I bought that I had the same feeling and effect from it."

At times defendant was out of it and said he would let the witness know when he got more in. At one time defendant came to the top of the steps and called to the witness and said: "The old man is in town." The witness understood by that the shipment of "Jake" had arrived. Sometimes he drank it in the drug store, and sometimes he took it away with him, or drank a part of it and took the rest away.

"The first few bottles I drank the only effect I had was alcohol—like drink-

ing alcohol. The first bottle I drank I felt just like I took a drink of alcohol or whisky, only it burned. Make you feel kinda dizzy—feel pretty good, like you owned half of the world, something like that. I had been intoxicated and this gave you that drunk effect. That was true each instance when I purchased this Jamaica ginger. It did not all taste alike. . . .

"Q. What was the difference in it? A. The last bottle I drank in there tasted like licorice and, I don't know—it had an awful taste. I said, 'George, something is wrong with that,' and he said, 'No, it is all right; it has got plenty of kick.' "

That was the last bottle he bought. He drank a part of it and poured the rest out, because it did not taste right. He went home.

"It made me sick, and I have been sick with jakeleg ever since. I never did get over it. As soon as the alcohol effect left I got sick at my stomach and continued to remain sick. I was sick for about three weeks or a month—that same feeling that I couldn't eat anything. . . . After I had taken this bottle I noticed the next morning it hit my stomach. It would just quiver and shake. That quit, and it went to my legs."

Later it went to his hands, and he was totally incapacitated for some time and was forced to quit the shop and had trouble running the business. He had other barbers employed and received forty per cent of their income, but out of this he had to furnish supplies and pay rent.

"I finally lost my trade. I cannot stand up and work now. I have a stool that I sit on and shave a little and cut hair some."

The last bottle, that tasted bad, was the one which gave him the paralysis. He drank it after quitting time, about seven o'clock in the evening. The same afternoon he had bought a bottle of Jamaica ginger from defendant, about four o'clock, and drank it about five-thirty.

"But it didn't seem to affect me, it only gave me a little power, and that died down and I thought I would get another bottle. I have been intoxicated many times. I never had paralysis from any of that intoxication. It never paralyzed me. My stomach would always work all right. I was acquainted with the fellows in town that drank almost daily. They never got any paralysis of their feet or hands by drinking any intoxicating liquor that I know of, except jakeleg."

Testifying to the intoxicating effect upon him of the two bottles of Jamaica ginger he drank on the day in question, which was the 4th, 5th or 6th of March, he testified:

"Q. That didn't make you drunk? A. It made me drunk, sick or crazy, I don't know what it was.

"Q. The first one you drank at five-thirty? A. Yes.

"Q. And you went from that until seven? A. When I went home to eat supper I had a pretty good charge under my belt, but I couldn't eat—I was simply sick, and I didn't eat supper.

"Q. And this bottle you drank first, you went ahead with your work until seven o'clock? A. Yes.

"Q. You were capable of going ahead with your work? A. Yes, the first bottle.

"Q. And the next time you drank out of another bottle, and you say it made you sick at your stomach? A. Yes, it made me sick and drunk first.

"Q. Did it first make you sick at your stomach? A. No, the first it didn't.

"Q. You went ahead and continued working until closing time, 7 or 7:30? A. I drank this about 5:30.

"Q. And what time did you go home? A. I bought the other jake about 6:30.

"Q. That was the one, that was the bottle that part of it made you sick at your stomach? A. Yes, sir."

He called the doctor about the 11th or 12th of March. The doctor asked him what he had been drinking, and he said he had drunk two bottles of Jamaica ginger. The doctor said:

"It wasn't good Jake; you got hold of some poison Jake."

All the purchases of Jamaica ginger from defendant the witness bought for the purpose of using it as intoxicating liquor.

Plaintiff called two other witnesses, who testified they had bought Jamaica ginger from defendant and became paralyzed; that the effect of drinking it was just like a drink of whisky. They had drunk other intoxicants, had been intoxicated, but never had paralysis by reason of having been intoxicated.

In sustaining the demurrer to the evidence the trial court apparently took the view that the paralysis was something distinct from intoxication and not the result or a consequence of intoxication. Had the trial court, or a jury, been weighing the evidence, perhaps that conclusion could have been reached. But in ruling upon a demurrer to evidence the court had no authority to weigh the evidence, but was bound to consider evidence offered on plaintiff's behalf as true and to give her the benefit of the most favorable inferences reasonably to be drawn therefrom. (See *Windus v. Bodecker*, 132 Kan. 857, 858, 297 Pac. 702, and cases there cited.) So construing the evidence—although there are discrepancies in it and some contradiction on material points—we think it should have gone to the jury.

The statute (R. S. 21-2150) under which the action is brought, so far as it is material on this appeal, is as follows:

. "Every wife . . . who shall be injured in . . . means of support
·. . . in consequence of intoxication, . . . of any person (her husband
in this case) . . . shall have a right of action in . . . her own name,
against any person who shall, by selling . . . intoxicating liquors, have
caused the intoxication. . . ."

This statute first appeared in this state as a part of the dram-shop
act of 1859 (Gen. Laws 1862, ch. 84, § 10; Gen. Stat. 1868, ch. 35,
§ 10). It was carried into our intoxicating-liquor laws of 1881
(Laws 1881, ch. 128, § 15), and, as revised to include words inad-
vertently omitted (*Landrum v. Flannigan,* 60 Kan. 436, 56 Pac.
753), is now R. S. 21-2150. It is a valid statute (*Werner v. Edmis-
ton,* 24 Kan. 147); each person mentioned in the statute sustaining
such injury may maintain an action (*Durein v. Pontious,* 34 Kan.
353, 8 Pac. 428); it is purely statutory, since no similar cause or
causes of action existed at common law, and recovery may be had
for both proximate and remote injuries (*Zibold v. Reneer,* 73 Kan.
312, 85 Pac. 290); and the right of action exists only against per-
sons causing intoxication (*Harris v. Hardesty,* 111 Kan. 291, 207
Pac. 188). The statute should be liberally construed to be effective
to carry out the purposes for which it was enacted (*Zibold v. Reneer,*
supra, pp. 317, 318), but the court should not amend it by giving it
an interpretation different from that which it has had since it was
originally enacted (*Harris v. Hardesty,* supra, p. 296).

In order for plaintiff to recover in this case it is necessary for her
to establish: (1) That defendant sold intoxicating liquors to her
husband; (2) that he became intoxicated by using such liquors;
and (3) that his condition, which injured her means of support,
was a consequence of such intoxication. The *first* of these was well
established; indeed, there is so little said about it here that we have
not set out the evidence on that point. It is well settled that the
sale of Jamaica ginger for beverage purposes may be enjoined or
prosecuted under our intoxicating-liquor laws. (*State v. Miller,*
92 Kan. 994, 142 Pac. 979.)

The *second,* that plaintiff's husband became intoxicated on the
Jamaica ginger sold him by defendant, is not so well established,
but under the rule of considering the evidence most favorably to
plaintiff, on a demurrer to evidence, that was a question for the
jury.

In 33 C. J. 637 it is said:

"To sustain an action . . . there must have been a 'sale' . . . of intoxicating liquor . . . which caused . . . a state of intoxication . . ."

Courts prudently have declined to state a hard-and-fast definition of "intoxication." (See 33 C. J. 802.) Yet we have statutes and decisions which differentiate one who is "under the influence of intoxicating liquors" from one "who is intoxicated" (R. S. 21-2160; *State v. Hayden*, 126 Kan. 799, 271 Pac. 291; *Thornton v. Franse*, 135 Kan. 782, 787, 12 P. 2d 728), as do statutes and decisions of other states (see annotation 68 A. L. R. 1356 *et seq.*).

The wording of the statute (R. S. 21-2150) and our own decisions and other authorities make it clear that intoxication must be proved.

*Third*, plaintiff must establish by proof that the injury to her means of support was in consequence of the intoxication of her husband. In *Monroe v. Hartford Street Ry. Co.*, 76 Conn. 201, 207, it was said:

"'Cause' and 'consequence' are correlative terms. One implies the other. When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result."

It is not essential to plaintiff's recovery that her husband's intoxication (if he was intoxicated) was the "proximate cause" of the injury to her means of support, as that term is used in negligence cases, for in *Zibold v. Reneer*, supra, it was held that the statute under which this action was brought "authorizes a recovery for both proximate and remote injuries." So we need not consider whether the paralysis of plaintiff's husband which resulted in the injury of her means of support is a proximate or remote consequence of his intoxication. Even if it be a remote consequence of such intoxication it is sufficient to enable her to recover. But it must be a consequence, proximate or remote, of his intoxication to enable her to recover under the statute. Whether plaintiff's husband was intoxicated, and whether the injury to her means of support was in consequence of such intoxication, are properly questions for the jury. (*Taylor v. Davarn*, 191 Mich. 243, 157 N. W. 572.)

Appellant argues that the evidence tends to show that on the day in question Coy purchased one bottle of Jamaica ginger from defendant about 4 o'clock in the afternoon, and drank it about 5:30, and became intoxicated thereby; that because of that intoxication and its "wearing off" he purchased the second bottle about 6:30,

drank part of it, with the result that he first became intoxicated and then paralyzed; that the purchase of the second bottle was "in consequence of the intoxication" produced by his drinking the contents of the first bottle, and that all the ill effects, whether of intoxication or paralysis, resulting from drinking the contents of the second bottle were in consequence of the intoxication produced by the first, and form a proper basis for plaintiff's recovery in this action. The court is impressed with the soundness of this argument. Certainly, if J. P. Coy was intoxicated by drinking from the first bottle, whatever he did because or in consequence of such intoxication and which resulted in injury to plaintiff's means of support would form a proper basis for her action. While the evidence supporting that view is not strong, considered most favorably to plaintiff, as it must be in passing on a demurrer to the evidence, we regard it as sufficient to go to the jury. Informative cases dealing with recovery "in consequence of intoxication," under statutes similar to our own, are: *Mahood v. Caldwell*, 33 Ohio App. 292, 169 N. E. 317; *Bistline v. Ney Bros.*, 134 Ia. 172, 111 N. W. 422; *Fest v. Olson*, 138 Minn. 31, 163 N. W. 798; *Healey v. Cady* (Vt.), 161 Atl. 151.

The result is, the judgment of the court must be reversed with directions to grant a new trial. It is so ordered.

BURCH, J. (concurring): The question is one of cause and consequence. The testimony of Coy, quoted above, was that in each instance when he drank Jamaica ginger it made him feel pretty good, gave him a drunk effect. The first bottle he bought on the day he bought the poison liquor did not disable him from work, only gave him a little power, that died down, and he thought he would get another bottle.

Had he been sufficiently intoxicated on the first bottle he would have gotten along without the second. As a direct consequence of the distress of not being drunk enough and about to get sober, he bought the poison liquor which disabled him.

HARVEY, J. (dissenting): I agree with the rule stated in the opinion, that if the evidence, construed most favorably to plaintiff, tends to support his cause of action, a demurrer to the evidence should be overruled. It is also the rule that when plaintiff's evidence is lacking on some essential point, the demurrer to the evidence

should be sustained. It is my judgment that in this case there is no substantial evidence that J. P. Coy was intoxicated from drinking the Jamaica ginger he purchased about 4 o'clock, or from that which he purchased about 6:30. It also seems clear to me from the evidence that his paralysis was not a consequence of any intoxication. The evidence seems to demonstrate that such paralysis is not one of the results of intoxication. The argument that his purchase of the second bottle was a consequence of his intoxication from the first seems to me to be fanciful. In the first place, his testimony was that his drinking the first bottle that afternoon "didn't seem to affect me; it only gave me a little power, and that died down." So there is no foundation on which to base this argument. Then, Mr. Coy's habits were such that he did not have to be intoxicated to buy a drink—he apparently did that when he was sober.

DAWSON and THIELE, JJ., concur in this dissent.