No. 32,394

F. E. Bell, *Appellee*, v. Charles W. Johnson, Receiver of The Armourdale State Bank, Kansas City, *Appellant*, et al.

(46 P. 2d 886)

Opinion filed July 6, 1935.

*C. A. Bowman,* of Kansas City, and *Braden C. Johnston,* of Marion, for the appellant.

*Errett P. Scrivner* and *Hugh E. Brownfield,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to recover moneys loaned to a bank which failed after the claimed loan was made.

The cause was tried on amended pleadings, which as far as it is necessary to note, alleged that on October 31, 1930, plaintiff loaned the bank $1,250, that interest had been paid to April 28, 1931, that $250 had been paid on the principal and that there was due $1,000 and interest.

The answer alleged that the bank was placed in receivership on June 5, 1931, and denied that plaintiff loaned the bank any money; that the bank had paid any interest or any payment on the claimed loan. By way of cross petition, defendant sought to recover from plaintiff his statutory liability as a stockholder. We need not notice the cross petition nor the plaintiff's reply.

At the conclusion of plaintiff's case in chief, defendants demurred to the evidence on the ground that no cause of action was proved. This demurrer was overruled and the trial proceeded and resulted in a verdict by the jury in favor of plaintiff for $1,065, and judgment was rendered accordingly that Charles W. Johnson, as receiver of the failed bank, issue and deliver to plaintiff a receiver's certificate for that amount, and pay the costs. His motion for a new trial was denied and he appeals, assigning as error the trial court's rulings on the demurrer to the evidence and on the motion for a new trial.

Plaintiff appears to have been the only witness in his case in chief. He testified that he had been engaged in the banking business at various places in Kansas from 1913 to the time of the matters here detailed, except for a time when he was in military service. He became a teller in the Armourdale State Bank in May, 1930. Henry Daniels was president of the bank at the time and seems to have been so until it failed and was taken in charge by the bank commissioner on June 5, 1931. On or about September 1, 1930, Daniels came into the cage which plaintiff ran and took out some cash and in lieu placed a paper slip designated Item No. 3. This paper was a blank check form, on the reverse side of which was a written memorandum:

"9/2/30   J. W. Burke.   Item No. 3, $1,250."

This was carried as a cash item for nearly two months. On or about October 30, 1930, plaintiff had a conversation with Daniels, his statement being:

"Q. State what that conversation was. A. I told Mr. Daniels that that item had been in the bank for a long time and it looked to me like we would probably be ready for an examination almost any time and that item

should be arranged for and taken out. He said, 'Yes, it should.' He wanted to know if I could make some kind of arrangements to take this up temporarily for the bank and that the bank would pay the interest on the money. I told him I didn't have any money, but I would try and see if I couldn't arrange to take this up in order to accommodate the bank. He said he would appreciate it if I could, and I went to the Commercial National and asked them if I could borrow some money. They said, 'Well, what kind of a statement can you make?' I said, 'Well, I can make the statement, but it really isn't much good. I really don't have any cash, but I would like to borrow this money for this purpose of taking up this item.' They loaned me the money."

He further testified he placed the money in the drawer and took out the item. The item shows also "Canceled: Oct. 31, 1930.—The Armourdale State Bank, Kansas City, Kansas."

The note to the Commercial National Bank was a demand note and under its ruling every sixty days it asked for interest or payment; that each sixty days plaintiff received a notice from that bank, he placed the item back in the drawer, took $1,250 in cash and went to the Commercial Bank "for the reason that if they were going to demand the payment of the note, I had the money to pay it with. I did that each sixty days from the time that note was made at the Commercial National until the bank closed." On cross-examination he stated the item was good, it represented $1,250, and he kept it and put it in the drawer when he took out $1,250 to go to the Commercial National Bank and when he put the money back, he took out the item. In explaining the matter, he stated he was asked by Daniels if he wouldn't take up the item temporarily for the bank; that the purpose in taking out the item was that it was a very old item; that Daniels didn't want it in there. He repeatedly gave that as the reason for substituting the cash for the item. Efforts by defendant's counsel to get any further explanation were frustrated by objection which the court sustained, but thereafter the following questions were asked and answers given:

"Q. All right, then upon your initiative, as you testified, in order to have this item out of your cage when the state banking authorities might come around to examine the bank, you suggested to Mr. Daniels that item be taken out, is that your testimony on your direct examination or not? A. Yes, I asked—I suggested the item be taken out.

"Q. And you kept that item, did you? A. Yes, sir; that represented $1,250.

"Q. You had been in the banking business about seventeen years before you went to the Armourdale State Bank? A. Yes.

"Q. And you now testify that you personally loaned the Armourdale State Bank $1,250? A. Yes, I did.

"Q. Did you have any evidence of that loan from the Armourdale State Bank—any evidence given to you by the Armourdale State Bank that you had made them a loan? A. Well, I had the item.

"Q. You had this canceled item? A. Yes.

"Q. And that is something that you took out of your own cage yourself? A. Yes, in lieu of that put in the cash."

Plaintiff further testified that he kept the item in his personal possession except at the sixty-day intervals when he put it in the drawer and took out $1,250 and went to the ·Commercial National Bank.

Did the court err in overruling the demurrer to the above evidence?

It may be observed that plaintiff instituted the action by claiming that he loaned money to the bank, and that the bank denied a loan had been made, and by way of cross petition set up a claim for stockholder's liability. Plaintiff's reply denied he was a stockholder. Appellee seeks to support the trial court's ruling partly on the ground that the reasons urged why the demurrer should have been sustained vary from the theory of defense as presented by the answer, in that estoppel was not pleaded; but is now relied on. Appellee urges further that as against a demurrer, every inference is to be resolved favorably to the plaintiff; that his honesty and good faith are presumed, and that if there are any contradictions even in his own testimony the demurrer should have been overruled. It may be conceded that as an abstract proposition the latter contention is correct. The rule is that in considering a demurrer to evidence, the court should consider only facts and inferences favorable to plaintiff (*James v. Grigsby,* 114 Kan. 627, 220 Pac. 267) and that the court must consider as true all portions of the testimony which tend to prove the allegations of plaintiff's petition, giving plaintiff the benefit of all inferences (*Windus v. Bodecker,* 132 Kan. 857, 858, 297 Pac. 702) and that in ruling on a demurrer the court has no authority to weigh evidence (*Coy v. Cutting,* 138 Kan. 109, 113, 23 P. 2d 458). On the other hand, where the plaintiff personally testifies to a state of facts which clearly precludes his recovery, the effect cannot be avoided. Plaintiff's statement shows clearly that he suggested that Item No. 3 had been in the bank a long time, it was about time for the bank to be examined and it ought to be taken out before the examination by the state authorities, and that acting upon that promise and at the request of Daniels, 'he borrowed the

money and put it in his drawer, taking out the item which he held, replacing it temporarily each sixty days. The canceled item is all the written evidence there is that plaintiff loaned money—either to the bank or to Daniels. There is no showing of any bank entry evidencing the loan—in fact, the testimony shows inferentially there was no such entry. There is considerable testimony as to details, and it is true that he testified he loaned the money to the bank, which was more in the nature of a legal conclusion than a statement of fact, but there is no testimony that warrants any other conclusion than that he put in the money and took out the item for the reason it had been carried for some time and the bank was about due for an examination, and thus made it appear the bank had $1,250 without an offsetting item. The question then arises whether he could recover the money he put in to take up the item.

In *State Bank v. Olson,* 116 Kan. 320, 226 Pac. 995, the defendant had given a note used to replace excess loans, and for the purpose of deceiving the bank examiner. Recovery was allowed plaintiff. In the opinion it was said that the banking business is fraught with public concern; that public faith, credit and honesty are a bank's main assets; that they are subject to public regulation in order to achieve the ends of legitimate business, and that the statutes require examination by the bank commissioner periodically in order that those who deal with banks may not be misled by appearances.

"To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from, the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction, the object of which is to give to the assets of the bank a favorable appearance for the purposes of examination, but less favorable for purposes of liability or enforcement." (p. 323.)

In *Hayes v. Addy,* 139 Kan. 481, 32 P. 2d 243, defendant was persuaded to indorse notes with pencil indorsement to be removed and erased after the bank had been examined. He defended on the ground he was an accommodation indorser. In the opinion it was said:

"There is no testimony in the record which controverts Kaul's own version of why he signed the note, and it is clear that he signed it knowingly and under no misapprehension and that he knew when he signed it that the purpose of the indorsement was to deceive the bank examiner. This is not a case where there is doubt as to the purpose. In addition to his statement of the purpose, it must be borne in mind that he had been cashier and president of a bank for a period of ten years. He knew just what a bank examination

is for, and that if enough indorsements of responsible parties could be had on notes belonging to the bank, under circumstances similar to those under which he indorsed, insolvency of a bank could be indefinitely concealed from the bank examiner. . . . We have no doubt as to what the result should be in this case; that under his own statement Kaul signed the note in question for the deliberate purpose of deceiving the bank examiner as to the condition of the assets of the bank, and by reason thereof is now estopped to deny liability." (pp. 483, 485.)

And see *McDaniel v. Altoona State Bank,* 126 Kan. 719, 721, 271 Pac. 394, where plaintiff sought to have notes, alleged to have been given a bank for accommodation, canceled and returned, the court, *inter alia,* saying:

"The trial court also held that plaintiff could not recover the notes, for in giving them he had knowingly aided the officials of the bank in a scheme to deceive the bank commissioner as to the assets of the bank, within the rule stated by this court in *State Bank v. Olson,* 116 Kan. 320, 324, 226 Pac. 995, and allied cases. Perhaps it was not necessary for the trial court to make this finding. There are circumstances, however, not necessary to be here detailed, which give support to this view. Naturally, if that was the purpose of the parties, the plaintiff could not recover in this action." (p. 721.)

Appellee argues, however, that in any event the demurrer was properly overruled because defendant's answer did not plead estoppel. From anything that appears in the record, the receiver of the failed bank may not have known of the facts until the plaintiff testified. The petition contained no allegations that put defendant on any notice further than he claimed to have loaned the bank $1,250, and had been repaid $250. He set up no copy of the Item 3, which he testified was his evidence of the debt.

In 21 C. J. 1244 it is said:

"It is a well-recognized exception to the rule that a party does not waive the estoppel where he has no opportunity to plead it."

And at page 1246 it is further said:

"It has been held that an estoppel which is not specially pleaded is not available, even though established by the evidence; but there is authority also to the effect that failure to object to evidence of estoppel waives the objection that the estoppel was not specially pleaded. So it had been held that where the facts showing estoppel are in issue and are admissible for any purpose under the pleadings, estoppel is available as a defense without being specially pleaded; that evidence of estoppel is admissible without being pleaded in order to rebut evidence introduced by the opposite party; and that where defendant offers evidence which warrants an estoppel upon him, without in any respect restricting it to any particular issue, he will not be heard to complain that the estoppel was not pleaded, unless defendant's evi-

dence was not presented voluntarily but was elicited when he was called for cross-examination under statute."

In *Durham v. C. C. & M. Co.*, 22 Kan. 232, it was held:

"Where testimony is given by a party, no wrong will ordinarily be done such party if the testimony so given be accepted as true. His testimony, like his admission, is good against him." (Syl. ¶ 2.)

In *Walls v. Zinc Co.*, 113 Kan. 700, 216 Pac. 308, it was said:

"The defendant argues that the plaintiff is bound by the evidence of his own witnesses, and that the verdict and findings are inconsistent with some of this evidence. The testimony of witnesses (other than himself) called by the plaintiff was not necessarily absolutely conclusive as against him." (p. 701.)

In *Stecher v. London Guarantee & Accident Co.*, 133 Kan. 89, 298 Pac. 754, appears the following:

"First, is the plaintiff bound and concluded by the testimony of his own witness, when the evidence given by such witness is against the interest of the plaintiff? The emphasis placed upon the fact of the evidence having been submitted by the plaintiff would lead one to infer there was a distinct difference as to the source of it, but while a party cannot impeach his own witness nor attempt to discount his credibility, yet he is never concluded by the statements made by any of his witnesses other than himself, and can with his other witnesses contradict such statements, leaving to the jury to determine, even among his own witnesses, the matter of weight and credibility. (*Wallach v. Wylie*, 28 Kan. 138; *Deering v. Cunningham*, 63 Kan. 174, 65 Pac. 263; and *Walls v. Zinc Co.*, 113 Kan. 700, 216 Pac. 308.)" (p. 91.)

In the instant case, there was no witness save the plaintiff, and his testimony plainly showed that the purpose in removing Item 3 and putting in the money which it represented was for the purpose of deceiving the bank commissioner or his assistants when the bank might be examined. Under the circumstances of this case, it was immaterial whether estoppel was pleaded or not. Plaintiff, on his direct as well as indirect examination, made statements against his own interest by which he is bound. There was no evidence to a contrary effect or from which a different implication or conclusion could be drawn. The demurrer to the evidence should have been sustained.

We need not discuss the ruling on the motion for a new trial.

The judgment of the lower court is reversed, and the cause is remanded with instructions to render judgment for the defendant.