## No. 34,771

A. W. HEFLING, doing business as A. W. HEFLING CONSTRUCTION ENGINEERS (Successors to Hefling and Hughes Engineering Company), *Appellee*, v. THE CITY OF SHARON, *Appellant*.

(106 P. 2d 680)

Opinion filed November 9, 1940.

*Riley W. MacGregor* and *H. Hobble, Jr.,* both of Medicine Lodge, for the appellant.

*William H. Burnett, Arthur H. Snyder, Harry H. Dunn* and *Fred C. Preble,* all of Hutchinson, for the appellee; *Walter F. Jones,* of Hutchinson, of counsel.

The opinion of the court was delivered by

THIELE, J.: This was an action brought by an engineer to recover from the defendant city for services alleged to have been rendered under the written contract hereafter mentioned. From an adverse judgment the city appeals, specifying various errors, among them being one that the trial court erred in not sustaining its demurrer to the plaintiff's evidence. The disposition of that specification will determine the appeal, and for that reason we have limited our statement of the pleadings and evidence.

In the petition, after setting forth the status of the parties, it is alleged that on April 6, 1937, the plaintiff entered into a contract with the defendant city whereby plaintiff was employed as a consulting engineer to prepare reports, maps, plans, specifications and estimates and to supervise the construction of a complete waterworks and sewer system in the defendant city, a copy of the contract being attached as an exhibit; that in compliance with the contract, plaintiff prepared preliminary plans, etc., and rendered the services specified insofar as plaintiff was permitted by the defendant until about April 19, 1938, when the defendant breached its contract; that prior to that date plaintiff had prepared complete plans, etc., all of which were approved by the Federal Emergency Administration of Public Works; that at the time the contract was made, the parties had in contemplation the procuring of a grant from the above administration; that plaintiff assisted in matters preliminary to a bond issue and was at all times ready, willing and able to continue with the performance of the contract and to make the necessary and proper final maps, plans, etc., but defendant failed and refused to accept the same and breached its contract. After reference to provisions of the contract, it is alleged that on December 23, 1938, the city contracted for the construction of a waterworks and sewer system in the amount of $30,802.50, and had completed such construction; that by reason thereof and by reason of the breach of the contract by the defendant, plaintiff was entitled to his compensation of five percent of $30,-802.50, or the sum of $1,540.12, plus $200 for the preliminary plans, etc., or a total of $1,740.12, for which he prayed judgment.

So far as need be noticed, the contract, dated April 6 1937, provided plaintiff was to make all necessary reports, maps, etc., for the construction of a complete waterworks and sewer system in the defendant city, and to submit the same to the city for its approval; to attend necessary meetings of the governing body of the city to explain the reports, plans, etc.; to be present at all lettings for construction and to advise the city with respect to the awarding of contracts. Provisions as to a supervising engineer and his compensation need not be noticed, for no claim thereunder was made. It was further provided that as total compensation the city was to pay plaintiff a sum equal to five percent of the total construction cost, payable in the following manner: As compensation for preparing preliminary plans, etc., $100 for each project when the plans, etc., were filed with the city; two percent when the contracts were

awarded and construction work commenced under the approved procedure of any governmental agency; two percent upon monthly estimates allowed to the contractor, and the balance at the time the work was completed and accepted.

The answer denied generally, admitted execution of the contract but denied it was lawfully executed, alleged that plaintiff did submit certain plans, etc., for a waterworks system, and about January 27, 1938, sent his voucher to the city for $100, which was thereafter paid; that the plans, etc., were rejected as it was the intent of the city to build both a waterworks and sewer system; that the city paid plaintiff the sum of $100 in full for all services and that afterwards plaintiff had performed no service and the city was not further indebted to him; that on April 15, 1938, plaintiff addressed a letter to the mayor of the city stating he did not intend to charge the city for the sewer plans because of his conversation when it was suggested they wait and see what was going to happen, but that he had a few days' spare time and had completed the plans. The city prayed the plaintiff take nothing.

Plaintiff's reply was a general denial except for an admission he had received the $100.

Plaintiff's evidence disclosed the following: Smith testified he was an employee of plaintiff and negotiated the contract on April 6, 1937, and in about ten days thereafter he made preliminary surveys for completing the water and sewer systems, which were submitted to the city for its approval about April 20th or 25th, and that these specifications were accompanied by an application to the Federal Works Administration for a grant of aid.

It was shown by the city's records that the contract with the plaintiff was made April 6, 1937, and that later, on April 22, 1937, Smith met with the governing body and submitted plans for a waterworks system and a resolution directing the mayor to make application for federal aid. Although not so stated, the inference is that the resolution was adopted. At a later meeting on August 16, 1937, the governing body adopted a resolution calling for an election on a bond issue for a waterworks (not sewer) system, the bond issue to be $16,500 and to be supplemented by a federal grant, the total cost not to exceed $30,000. The city clerk testified that contracts for a waterworks and sewer system were let in the latter part of 1938, the exact date not being shown, although it is alleged in the petition to be December 23, 1938, and that the aggregate cost was

$38,543.71; that one contract was for tank, tower and footings, a second was for pump, well and pump house, and the third was for the water and sewer system combined.

The plaintiff Hefling testified in his own behalf that he was an engineer and had talked with the mayor of the defendant city in April, 1937, and had told him that while the contract called for a preliminary fee of $100 for the sewer system, he would not be able to get anything definite until the PWA opened up again, when he would try to get the sewer system through. He identified a set of plans which he stated were submitted with estimates to the mayor, but that they were never officially acted upon by the city; that in May, first stated as 1938 and later corrected as 1937, he wrote the mayor in regard to whether plaintiff should file the sewer project with PWA and that if he didn't hear he would drop the matter, and that he never received any answer to his letter; that he talked with the mayor over the telephone and was advised the city had not decided whether it would go on with the sewer project. He further stated that after May 21, 1937, neither the mayor nor any member of the council gave him any further advice respecting the program; that on April 15, 1938, he had written a letter to the city that he could put in a waterworks system for $47,000, but for a job of which the city would be proud the cost would be in excess of $52,000, and that at that time he had never obtained approval from the PWA of the project. He admitted that on January 1, 1938, he sent the city a voucher for $100 and that it had been paid; that he had been paid in full for all preliminary plans and that he had never done any work since; that he had nothing to do with getting any project under way, and that if the city had never put in a waterworks and sewer system under the contract let late in 1938 he would not have been in court with his claim.

We have also examined the evidence offered by the city after its demurrer was overruled to determine whether it supplied any of the links which it claims are missing from plaintiff's proof, and we find it did not.

It is here noted the trial court gave judgment to plaintiff for five percent of the construction cost of $38,542.71, less the $100 paid, or $1,825.

It seems clear from the allegations of the petition that it was the intention of the city to build a combined waterworks and sewer system and that the improvement was to be financed in part by pro-

curing a grant from some agency of the federal government. The contract refers to the project as an entirety, with the exception that in the provision for compensation, the city agreed to pay the engineer for preparing preliminary reports, plans, etc., a fee of $100 "per each project" to be paid when the plans, etc., were filed with the city. Any ambiguity there may have been was resolved, however, for the plaintiff's evidence showed that when the engineer prepared and filed his preliminary plans for a waterworks system, separate and apart from the sewer system, and filed them with the city, the city adopted the resolution directing the mayor to make application for federal aid.

The plaintiff's evidence also showed that shortly after the contract was made he told the city he would not be able to get anything definite on the sewer project until the PWA opened up again; that later he wrote the mayor stating if he didn't hear he would drop the matter and he received no reply, and that in a telephone conversation, the mayor told him the city was undecided about the sewer project. Plaintiff's evidence shows that was all he did about the sewer project so far as the city was concerned.

With respect to the waterworks system for which he prepared preliminary plans, as stated above, and for which he stated he had been paid, the evidence showed that the last act by plaintiff was on April 22, 1937, when he submitted those plans and the resolution directing the mayor to apply for a federal grant. We do not overlook the fact that on August 16, 1937, the city adopted a resolution calling for an election on a bond issue for a waterworks system. However, we do not believe that proof that contracts for a combined waterworks and sewer system, let December 23, 1938, over sixteen months after the election and over nineteen months after the submission of preliminary plans for a waterworks (not a combined waterworks and sewer) system, when considered in connection with absence of any showing of any services by plaintiff in the interim, is any proof that the project completed under the contracts was done under any plans and specifications prepared by plaintiff and submitted to the city for its approval, as was required by the contract. It would seem no other conclusion could be reached, for there is no testimony even suggesting that plaintiff made the final plans under which the combined contract was let, or that he was present at the letting, or that he advised the city in any manner as to the contracts under which the project was actually completed, or that he other-

wise performed the contract in its entirety. Plaintiff's own testimony shows he was paid for performing in preparing his preliminary plans; that he had nothing to do with getting the project under way, and if the contract of December 23, 1938, had not been made, he would not have been in court with his claim.

In the early case of *Durham v. C. C. & M. Co.*, 22 Kan. 232, 243, this court, speaking by Brewer, J., said:

"And where testimony is drawn from the lips of a party or his agents, no wrong will ordinarily be done such party if the testimony so given be accepted as true." (p. 243.)

In *Bell v. Johnson*, 142 Kan. 360, 46 P. 2d 886, the court considered the question of plaintiff's admissions where a demurrer to his evidence had been interposed, and said:

"Appellee urges further that as against a demurrer, every inference is to be resolved favorably to the plaintiff; that his honesty and good faith are presumed, and that if there are any contradictions even in his own testimony the demurrer should have been overruled. It may be conceded that as an abstract proposition the latter contention is correct. The rule is that in considering a demurrer to evidence, the court should consider only facts and inferences favorable to plaintiff (*James v. Grigsby*, 114 Kan. 627, 220 Pac. 267) and that the court must consider as true all portions of the testimony which tend to prove the allegations of plaintiff's petition, giving plaintiff the benefit of all inferences (*Windus v. Bodecker*, 132 Kan. 857, 858, 297 Pac. 702), and that in ruling on a demurrer the court has no authority to weigh evidence (*Coy v. Cutting*, 138 Kan. 109, 113, 23 P. 2d 458). On the other hand, where the plaintiff personally testifies to a state of facts which clearly precludes his recovery, the effect cannot be avoided." (p. 363.)

Later in the same opinion, after citing authority, it was said:

"Plaintiff, on his direct as well as indirect examination, made statements against his own interest by which he is bound. There was no evidence to a contrary effect or from which a different implication or conclusion could be drawn. The demurrer to the evidence should have been sustained." (p. 366.)

In the case at bar, plaintiff's own evidence precludes his recovery, and the demurrer of the defendant city to his evidence should have been sustained. In view of this conclusion, we shall not discuss other specifications of error.

The judgment of the trial court is reversed and the cause remanded with instructions to the trial court to set aside the judgment rendered in favor of the plaintiff and to sustain the defendant's demurrer to plaintiff's evidence.