No. 36,155

Ross J. EVANS, *Appellee* and *Cross-appellant*, v. WILDA THORNTON, *Appellant*.

(152 P. 2d 853)

Opinion filed November 4, 1944.

*C. C. Stewart* and *George K. Melvin,* both of Lawrence, argued the cause for the appellant.

*M. W. Borders,* of Kansas City, Mo., argued the cause, *Howard E. Payne,* of Olathe, *John F. Reinhardt, Abraham E. Margolin, Wilfred Wimmell* and *Philip J. Close,* all of Kansas City, Mo., were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from certain rulings of the district court in an action for damages for alleged breach of contract, and in a cross action for damages based on alleged fraud. The jury failed to agree, and both parties have brought the record here to obtain an adjudication of such questions as are now appealable before proceeding further in the trial court. Those questions will be developed as we proceed.

It appears that in 1940 and for many years prior thereto the plaintiff, Ross J. Evans, and the late Lee Thornton were partners in a manufacturing enterprise known as the Rex Art Casket Company. The partners resided in Kansas City, Kan., and their business establishment was located there. Their business had prospered; the partnership had substantial assets, one of which was a farm near Warsaw, in Benton county, Missouri.

Thornton died intestate and without issue, leaving the defendant and cross petitioner, Wilda Thornton, as his sole statutory heir under Kansas law.

Ross J. Evans, surviving partner, was appointed and qualified as administrator of the partnership estate.

Mrs. Wilda Thornton was appointed and qualified as administratrix of her deceased husband's personal estate.

Shortly after the appointment of Evans as administrator of the partnership estate, an inventory and appraisement was made of the partnership assets as follows:

"Plant inventory ................................... $28,242.00
Machinery ....................................... 706.00
Office equipment ................................. 424.00
Personal property ................................ 725.00
Real estate ...................................... 14,540.00
Cash ............................................ 8,631.46
Notes receivable ................................ 116.00
Accounts receivable ............................. 20,303.78"

These items made an aggregate gross of $73,688.24. There were accounts payable in the sum of $5,611.05. The item "Real Estate" appraised at $14,540, was based on the assessed taxable value of the factory site in Wyandotte county and the Missouri farm. The farm was inventoried and appraised at its assessed value for taxation in Missouri at $5,140. The item "Accounts receivable" appraised at $20,303.78 had a face value of $67,679.28. Thus the net value of the partnership estate according to its inventory and appraisement prepared for the probate court of Wyandotte county was $68,077.19.

While the proceedings for the probate administration of the partnership estate appear to have been regularly begun in the probate court of Wyandotte county, that administration did not proceed in accordance with the prescribed probate procedure. There were no ancillary proceedings in any court of probate in Missouri which would have had authority to reduce the Missouri assets of the partnership (that is, the Benton county farm) to money, so that all the assets of the partnership could have been properly brought under control of the probate court of Wyandotte county. Instead, shortly after Evans was appointed and qualified as administrator, he began negotiations with Mrs. Thornton for the purchase of her deceased husband's share of the partnership estate. These negotiations culminated in a written contract whereby Mrs. Thornton sold to Evans the entire Thornton interest in the partnership for $45,000 in cash. The written contract included some details stated at length,—that Evans had paid the probate court expenses so far as the partnership administration had then progressed; that any liabilities of the partnership estate were to be assumed by Evans, and

that he was to pay whatever income tax might be chargeable against the partnership. Mrs. Thornton agreed to pay all attorney's fees and whatever further probate court costs might accrue in the final closing of the partnership estate; and she also agreed to execute and deliver to Evans a full and unconditional release of all rights in the partnership assets, and agreed to execute and deliver to him a deed to the Missouri farm, which deed was to be—

"Withheld from the records until such time as this estate is closed which party of the first part and party of the second part understands cannot be finally completed until on or after the 15th day of June, 1940, [1941]."

In accordance with this contract Evans paid Mrs. Thornton the agreed purchase price, and received from her whatever bill of sale or other instrument releasing her right in the partnership assets was required, including a quitclaim deed to the Missouri farm.

Evans as administrator of the partnership estate and Mrs. Thornton as administratrix of the individual estate of Thornton employed the same attorney. He testified:

"I have done work for Lee Thornton for twenty years. Started probating the partnership estate when Mr. Evans came to me. I think the probating of that estate stopped short in about four months; when Mrs. Thornton sold her interest in the partnership to Mr. Evans. I then took a short cut and reported the sale and wound it up just as soon as the necessary nine months had run."

Now we come to the inception of this lawsuit. It chanced that Thornton had left surviving him one brother and three sisters; and on May 2, 1942, an action was begun by them in the circuit court of Benton county, Missouri, to partition the Benton county farm which had been an asset of the Evans-Thornton partnership, and which had passed to Evans under the written agreement between him and Mrs. Thornton as sole heir of her husband under Kansas law.

There was nothing in any court record in Missouri nor any timely showing made in the Missouri court that the Benton county farm had been an asset of a Kansas business partnership. The Missouri law which was pleaded in the partition suit provides that when a husband dies without issue but leaves a widow she inherits half of his Missouri realty, and the other half devolves on his heirs at law. In this instance these were his brother and three sisters. And so judgment in partition was decreed as. prayed for. The circuit court found that Evans had a three-fourths interest in the farm, and the heirs under Missouri law had a one-fourth interest.

The farm was sold in partition, and Evans purchased it for $13,750. On his three-fourths interest the court allowed Evans $9,757.58, which left him out-of-pocket $3,992.42 as the balance of the purchase price he had paid to save the farm at the partition sale.

On the theory that in his agreement with Mrs. Thornton for the purchase of the entire Thornton interest in the partnership assets—but he had only got a half interest in that particular asset, which was the Missouri farm—Evans brought this action against Mrs. Thornton for $3,992.42, pleading all the pertinent facts.

To plaintiff's petition, Mrs. Thornton filed an answer which contained a general demurrer and a general denial; and therewith she filed a cross petition in which she alleged that following the death of her husband, the plaintiff, as surviving partner and administrator of the partnership estate, had full knowledge of the extent of the partnership business, the profits made thereby, and the value of the business, and that plaintiff falsely represented to her that the value of the partnership property did not exceed the sum of $68,000.

The cross petitioner also alleged that she was entirely without business experience and was not familiar with the earnings of the partnership business nor with the value of its assets, nor with the accounts owned by the partnership. She further alleged that she believed plaintiff's statements as to the value and extent of the property, and that she relied on plaintiff's statements when she made the written contract with him to sell her interest in the partnership property to him for $45,000; that in fact and to the knowledge of plaintiff the partnership property was worth $160,000; and that relying on plaintiff's false representations which he knew to be false she sold her interest in the property for $40,000 ($45,000 to be exact) when that interest was in fact worth $80,000.

The cross petitioner further alleged that she had no knowledge of the falsity of plaintiff's representations on which she had relied until the month of September, 1941. Her cross petition prayed judgment for $40,000 as her damages on the cause of action pleaded in her cross petition.

To this cross petition plaintiff filed a general denial.

A jury was called to try the issues of fact. Defendant's demurrer to plaintiff's evidence on the ground that it did not prove a cause of action against her was overruled. Following the introduction of the evidence on behalf of the defendant-cross petitioner, plaintiff moved for judgment on the ground that she had failed to prove a

cause of action against him on her cross petition. He also moved for a directed verdict. These motions were overruled.

Following the court's instructions the cause was argued to the jury, and after deliberating for two days the jury reported its inability to agree on a verdict. Before its discharge there was some colloquy between court and counsel about the propriety of directing the jury to return a verdict on any part of the disputed issues upon which it might be able to agree. The trial court, outside the hearing of the jury, ruled that only a complete verdict would be accepted. Defendant then moved for a directed verdict in her behalf based on the entire record. Her counsel likewise moved the court to reconsider its ruling on her demurrer to plaintiff's evidence. This motion was denied. The court found that the jury could not agree and ordered it excused and discharged.

Both parties appeal. The errors assigned by each are suggested by our extended narrative set out above.

First, let us consider some rudiments of the law of business partnerships which bear pertinently on the matters of present concern. In *Farney v. Hauser,* 109 Kan. 75, 198 Pac. 178, it was said:

"While a partnership is not strictly a legal entity, for practical purposes it may be considered as a business entity. It has its own capital, its own assets and liabilities, and it has a commercial life and credit of its own, virtually though not technically independent of the members comprising it." (Syl. ¶ 2.)

See, also, *Campbell v. Bohan,* 148 Kan. 205, 80 P. 2d 1110.

Subject to exceptions of no present importance, when the affairs of a business partnership have to be wound up on account of the death of a partner, or other sufficient cause, all the assets of the partnership, lands, money, goods and accounts are treated as personalty and the legal title thereto vests in the liquidating administrator of the partnership assets. Thus in *Apple v. Smith,* 105 Kan. 732, 185 Pac. 903, where the rights and interests of the parties in a partnership which dealt in mining leases were considered, the late Chief Justice Johnston, speaking for the court, said:

"Treating the leases as interests in real estate, it was competent for the court, in settling the partnership affairs, to treat real estate belonging to partners as personal property. (*Tenney v. Simpson,* 37 Kan. 353, 15 Pac. 187; *Jones v. Davies,* 60 Kan. 309, 56 Pac. 484.)" (p. 738.)

In *Waldo v. Ross,* 149 Kan. 168, 86 P. 2d 518, it was said:

"When one of two or more partners dies the partnership is terminated, and the partnership assets become a partnership estate to be administered and liquidated according to the statutory procedure. . . . The entire partner-

ship estate is to be applied to the payment of the partnership debts. (G. S. 1935, 22-403.) And it is only after those debts are satisfied and the partnership affairs are settled up that the net remainder—the excess—is to be apportioned between the surviving partner and the executor or administrator of the deceased partner's estate. (citations.)" ( p. 170.)

See, also, *Sternberg v. Larkin*, 58 Kan. 201, 48 Pac. 861; *Apple v. Smith*, supra; id., 106 Kan. 717, 190 Pac. 8; *Coleman v. Apple*, 298 Fed. 718; 21 Third Dec. Dig. 1064; 24 Fourth Dec. Dig. 1413.

The settlement of the partnership estate devolves primarily upon the surviving partner where he elects to undertake it. (*Implement Co. v. Keyser*, 99 Kan. 8, 11, 161 Pac. 592.) The pertinent provisions of the present probate code, effective July 1, 1939, in part, read:

"The property of a partnership dissolved by the death of any of its members shall be delivered to the surviving partner who may be disposed to undertake the management thereof agreeably to the conditions of a bond which he shall give as provided by law. Upon the giving of such bond he shall with due diligence close the affairs of the late partnership, apply the property thereof toward the payment of the partnership debts, render an account upon oath to the probate court, whenever by it required, of all partnership affairs, including the property owned by the late firm and the debts due thereto, as well as what may have been paid by the survivor toward the partnership debts, and what may still be due and owing therefor, and pay within one year, unless a longer time be allowed by the probate court, to the executor or administrator his proportion of the net proceeds of the partnership estate." (G. S. 1943 Supp. 59-1001.)

"An executor or administrator having the whole of the partnership estate in his possession, as herein provided, may sell the assets thereof at public or private sale as provided by law, and may without such possession sell the interest of the deceased partner therein in the manner aforesaid. The surviving partner shall be an eligible purchaser." (G. S. 1943 Supp. 59-1004.)

"The person executing the trust, whether surviving partner or executor or administrator, shall have the same duty to account and to have his account adjudicated as in the case of ordinary administration; and such person shall be subject to the same liabilities, remedies, and penalties with reference thereto as an ordinary administrator." (G. S. 1943 Supp. 59-1005.)

It is therefore apparent that although later a part of the title to the Missouri land succumbed to the claims of Lee Thornton's collateral kindred in the Missouri partition suit, that event was through no fault of Mrs. Thornton. She was the sole statutory heir of her husband under Kansas law. All the assets of the partnership should have been regarded and dealt with as personalty under general principles of equity, which must be assumed to have been the same in Missouri as in Kansas and elsewhere since there was no showing to the contrary. (*Newton v. Insurance Co.*, 95 Kan. 427, 434, 148 Pac.

619.) See, also, *Schaefer v. Milner*, 156 Kan. 768, 137 P. 2d 156. It was the duty of Evans as administrator of the partnership estate to take the proper steps under ancillary proceedings in probate in Missouri to reduce the Missouri land to the purposes of winding up the affairs of the partnership. If that had been done in timely and proper fashion, there would have been no basis for a partition suit at the instance of Thornton's collateral kindred. A cursory examination of the pertinent Missouri statutes and decisions indicates that the authority of the administrator of a partnership estate and the necessity of administrating it under the supervision of the probate court are in substantial accord with our local law. (1 Rev. Stats. Mo. 1939, "Administrators—Partnership Estates," art. 3, pp. 18-22, and annotations; *Ensworth v. Curd*, 68 Mo. 282; *Troll v. St. Louis*, 257 Mo. 626, 695 *et seq.*, 168 S. W. 167.) Be that as it may, the plaintiff has no basis for a claim of any sort against Mrs. Thornton. Plaintiff claims that she sold him the entire Thornton interest in the partnership assets. And she did so. Moreover, she executed the instruments she agreed to execute. She signed the quitclaim deed of all her interest in the Missouri land as heir of her husband. She warranted nothing. This court holds that under the entire record, defendant was entitled to judgment on the cause of action brought against her.

Coming now to the questions whether Mrs. Thornton as cross petitioner sufficiently alleged a cause of action against Ross J. Evans for damages for fraud, and, if so, whether the evidence in her behalf made a case of sufficient potency to withstand Evans' demurrer thereto.

In her cross petition Mrs. Thornton pleaded inexperience in business matters and that she knew nothing of the value of the partnership property; that Evans falsely represented to her that the partnership property had a value not to exceed $68,000; that she had full confidence in the integrity of Evans, believed his statements, and relied on them in making the contract to sell her interest to him; that the statements of Evans as to the value of the partnership were false and were known to him to be false.

She further alleged that to the knowledge of Evans the value of the partnership property was at least $160,000; that relying on his false representations she sold her interest which had an actual value of $80,000 for less than $40,000 after payment of administration expenses including a $5,000 fee to the attorney who represented Evans

as administrator of the partnership estate. She alleged that she had no knowledge of the falsity of Evans' representations as to the value of the property until September, 1941.

She prayed judgment for $40,000.

Considering Mrs. Thornton's alleged inexperience in business affairs and her alleged lack of information concerning the value of the partnership assets, and further considering that Evans was conversant with the partnership affairs, and considering the high standard of honesty, candor and fair dealing which the law imposed on him as administrator of the partnership estate (*Alumbaugh v. Hedges,* 125 Kan. 449, 265 Pac. 50, and citations; *Malden Trust Co. v. Brooks,* 276 Mass. 464, 177 N. E. 629, and annotation thereto in 80 A. L. R. 1034 *et seq.*), this court has no hesitancy in holding that Mrs. Thornton's cross petition sufficiently pleaded a cause of action on account of fraud.

Touching the sufficiency of evidence adduced in support of the cause of action pleaded by the cross petitioner, some of her witnesses who professed to have had experience in the valuation of the assets of business firms gave opinion testimony which put the valuation of the assets of the partnership estate at high figures. One teacher and practitioner of auditing and accounting who had examined the books and records of the partnership testified that in about 100 days, between the day Thornton died and September 20, some $32,000 of the outstanding accounts had been collected; and that later almost the entire amount had been collected in full. The same witness testified in detail in regard to the extensive sales and large profits of the business. Another witness was a banker who had formerly been an appraiser of values of commercial enterprises. He testified that he was qualified to examine an audit of a business concern and arrive at a fair estimate of its value; that he had done so in respect to the Evans-Thornton partnership, and had spent several days studying it; and based thereon his opinion was that the partnership assets had a value of $150,000 to $200,000.

Passing as unimportant to a solution of the question of present concern the testimony of witnesses for the cross defendant, and likewise passing the documentary evidence which was somewhat favorable to him, we think the evidence we have already summarized would be sufficient to take the case to the jury on the question whether $45,000 was a fair estimate of Mrs. Thornton's interest in the property.

But we are confronted with a perplexing problem when we come to deal with the testimony she gave in her own behalf. It is true she testified that Evans told her the accounts (which had a face value of $67,679.28 and were inventoried at $20,303.78) were "all bad accounts, nearly all of them," and "he said it would cost him more than the accounts would be worth to collect them . . . At the time I sold the interest of my husband, what I inherited in the partnership and agreed to take net $40,000 for it at that time, I was relying on what Mr. Evans told me as to the value of those accounts." She also testified that his first offer to her was $20,000 for her half of the partnership estate; that she told him that offer was too low; that he later raised that offer to $40,000; that he offered either to buy or sell for $40,000; that she told him she did not wish to buy but she didn't think that offer was enough. · Later Mr. Evans set a price of $40,000 excluding from the assets the Missouri farm or a price of $45,000 for all the assets including the farm. "Mr. Evans had told me in his opinion his offer was a fair value."

Conceding that the foregoing summary of cross petitioner's testimony would be sufficient to show that she relied on the statements of Evans as to the value of the partnership assets when she entered into the written contract with him to sell her entire interest for $45,000, we must take particular notice of her further testimony. She also testified that she and Evans met frequently with Carson, the attorney who represented Evans as administrator of the partnership estate and who represented her as administratrix of Thornton's individual estate, and that the three of them frequently discussed the value of the partnership estate; that this attorney advised her that she should accept Evans' offer of $40,000 and keep her interest in the Missouri farm; that she also frequently consulted a banker, J. G. Boomer, with whom her late husband had done business for many years, and that her husband had often advised her that if the need should arise she should consult Mr. Boomer.

"I don't remember how many times I discussed the matter with Mr. Boomer, but several times; three or four up to the time it was sold. . . . I told Mr. Boomer what Mr. Evans' offer was. He didn't think it was a fair price. I don't remember that he told me what he thought a fair price was. I talked to Mr. Boomer because I trusted him. My husband always told me he would give me good advice. I wanted his advice as to what a fair price and fair value was. That is why I went to Mr. Boomer. I believed in Mr. Boomer and trusted him. . . . When I made my final decision I didn't reject Mr. Boomer's advice that I know of. He did advise me that the offer was too low. . . . Mr.

Boomer advised me to take the second offer, including the farm. The first proposition was for the sale for $40,000 without the farm. The second was for $45,000 with the farm. . . . I had seen the written offer. . . . After I received it . . . I talked with Mr. Boomer and he advised me to take the second proposition. I also talked with Mr. Carson. He advised me to take the first proposition. . . . I couldn't say just how long after I received Mr. Boomer's and Mr. Carson's advice before I signed the contract of sale on September 20th; it was a week or more. I finally made up my mind to take the second proposition. *That was my own independent judgment after I had received the advice of my attorney and the banker. Everyone I talked to thought that was the best. I made up my own mind to take offer No. 2* because I didn't want the farm." [Italics ours.]

Elsewhere she also testified that she had three or four conversations with a Mrs. Dorney who had been in the employment of the Evans-Thornton partnership for a number of years.

"I think I discussed with her the value of the property during those three or four conversations; also Mr. Evans' offer to me. I trusted and believed in Mrs. Dorney as I had in Mr. Boomer. I relied on her judgment like I did on Mr. Boomer to a certain extent."

In view of this testimony of the cross petitioner herself, can it be said that the case should have been submitted to the jury on the question whether she did in fact rely on the alleged false representations of Evans as to the value of the partnership assets when she sold out to him on September 20, 1940? A majority of this court are inclined to answer this question affirmatively. Consequently the trial court's ruling on the sufficiency of the evidence to withstand plaintiff's motion for judgment on the entire record on the ground that the defendant cross petitioner had failed to prove that she relied upon the representations made by plaintiff was correct.

In conclusion we hold that the judgment of the district court on defendant's motion for judgment in the appeal should be reversed with instructions to the trial court to dismiss plaintiff's action. On the cross appeal the judgment of the trial court was correct, and that cause is remanded for further proceedings in accordance with the views herein expressed. It is so ordered.

Dawson, C. J. (dissenting in part): I think that the testimony of the cross petitioner shows conclusively that she did not rely on Evans' statements as to the value of the partnership assets when she sold out to him on September 20, 1940. On the contrary, the allegation in her cross petition that she did so rely was conclusively destroyed by her testimony touching her extended and repeated con-

sultations with her attorney Carson, with Mr. Boomer the banker, and with Mrs. Dorney.

This court has a rule of appellate practice that when the testimony of a litigant in detail clearly destroys the basis for her cause of action she is not entitled to go to the jury, and judgment on her own evidence or on a directed verdict should be rendered against her. (*Durham v. C. C. & M. Co.*, 22 Kan. 232; *Bell v. Johnson*, 142 Kan. 360, 46 P. 2d 886; *Hefling v. City of Sharon*, 152 Kan. 512, 106 P. 2d 680; *Ray v. Allen*, No. 36,173, this day decided. See, also, pertinent annotations in 50 A. L. R. 979 *et seq.*, and 80 *id.* 624 *et seq.*)

I have not overlooked the fact that, according to Mrs. Thornton's testimony, several months after she sold out to Evans, he told her that the outstanding accounts of the partnership were coming in very slowly. But that false statement of Evans, if he made it, had no bearing on the critical issue in this lawsuit, which was whether she relied on his false statements of the value of the assets, believing them to be true, when she sold out to him.

I would order judgment for plaintiff on the defendant's cross petition, which would end this litigation entirely.